IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

MARK W. RETTENMAIER,

      Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

      Defendant.

No. C13-1011

RULING ON JUDICIAL REVIEW

---

## TABLE OF CONTENTS

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    **PRINCIPLES OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    **FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.    *Rettenmaier's Education and Employment Background* . . . . . . . . . 5
    B.    *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . 5
        *1.*    *Rettenmaier's Testimony* . . . . . . . . . . . . . . . . . . . . . 5
        *2.*    *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . 6
    C.    *Rettenmaier's Medical History* . . . . . . . . . . . . . . . . . . . . . . . 7

V.    **CONCLUSIONS OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    A.    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . 10
    B.    *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . 13
        *1.*    *RFC Assessment* . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        *2.*    *Justmann's Opinions* . . . . . . . . . . . . . . . . . . . . . . . . 15
        *3.*    *Credibility Determination* . . . . . . . . . . . . . . . . . . . . . 18
        *4.*    *Third-Party Statements* . . . . . . . . . . . . . . . . . . . . . . 21

VI.    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VII.    **ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Mark W. Rettenmaier on March 19, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Rettenmaier asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Rettenmaier requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On August 17, 2009, Rettenmaier applied for both disability insurance benefits and SSI benefits. In his applications, Rettenmaier alleged an inability to work since July 15, 2009 due to bipolar disorder. Rettenmaier's applications were denied on September 28, 2009. On April 20, 2010, his applications were denied on reconsideration. On June 24, 2010, Rettenmaier requested an administrative hearing before an Administrative Law Judge ("ALJ"). On October 4, 2011, Rettenmaier appeared via video conference with his attorney before ALJ Eric S. Basse for an administrative hearing. Rettenmaier and vocational expert Vanessa May testified at the hearing. In a decision dated November 22, 2011, the ALJ denied Rettenmaier's claims. The ALJ determined that Rettenmaier was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Rettenmaier appealed the ALJ's decision. On January 17, 2013, the Appeals Council denied Rettenmaier's request for review. Consequently, the ALJ's November 22, 2011 decision was adopted as the Commissioner's final decision.

On March 19, 2013, Rettenmaier filed this action for judicial review. The Commissioner filed an Answer on June 6, 2013. On July 8, 2013, Rettenmaier filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work that exists in significant numbers in the national economy. On September 5, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On September 17, 2013, Rettenmaier filed a reply brief. On June 6, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*,

674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d

1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Rettenmaier's Education and Employment Background

Rettenmaier was born in 1964. He is a high school graduate. The record contains a detailed earnings report for Rettenmaier. The report covers the time period of 1981 to 2010. Rettenmaier earned $288.14 in 1981, and $1,578.71 in 1982. He had no earnings from 1983 to 1986. From 1987 to 2009, he earned between $3,927.00 (1987) and $27,948.00 (2007). He has no earnings since 2010.

### B. Administrative Hearing Testimony

#### 1. Rettenmaier's Testimony

At the administrative hearing, Rettenmaier testified that his primary obstacle to working full-time is a seasonal cycle of manic depression. Rettenmaier indicated that with the quarterly change of seasons, he goes through a manic episode making work and other social activities difficult. Rettenmaier described his manic episodes as follows:

> I usually go from being a normal person to start getting kind of snappy with everybody, and I don't get anything accomplished. Sometimes I'll take off. You know the usual things. Spend money and do things you're not supposed to be doing. Then you know I'm kind of at that point in the manic stage where I don't sleep much. It's all about going, and then I'll just eventually crash.

(Administrative Record at 42.) When he crashes, Rettenmaier stated that he sleeps for extended periods (up to 20 hours at a time) and doesn't do "much of anything for a week or better."[1] According to Rettenmaier, overall, from start to finish, his manic depressive episodes generally last "a few weeks," estimating that to be 2-4 weeks.

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who:

> has no exertional limitations. The hypothetical person is capable of tasks that can be performed in 30 days or less involving no more than simple work-related decisions and few work place changes, and can have only brief superficial interaction with the public and coworkers.

(Administrative Record at 57.) The vocational expert testified that under such limitations, Rettenmaier could not perform his past relevant work, but could perform the following jobs: (1) mail clerk (700 positions in Iowa and 64,000 positions in the nation), (2) laundry folder (800 positions in Iowa and 95,000 positions in the nation), and (3) janitor (12,000 positions in Iowa and 1,500,000 positions in the nation). The ALJ provided the vocational expert with a second hypothetical question which was identical to the first hypothetical except that "three or four times a year [the hypothetical individual] would be unable to attend to work tasks for one to several weeks at a time."[2] The vocational expert testified that under such a limitation, Rettenmaier would be precluded from competitive employment.

---

[1] Administrative Record at 42.

[2] *Id.* at 58.

6

## C. Rettenmaier's Medical History

On May 7, 2009, Rettenmaier met with Dr. Michael Flaum, M.D., for a psychological evaluation. Rettenmaier told Dr. Flaum that he was "looking for a second opinion."[3] Dr. Flaum described Rettenmaier's symptoms as follows:

> when he becomes manic he experiences increased energy, decreased need for sleep (less than 4 hours), increased irritability, more argumentative and defiant. . . . He also experiences racing thoughts with anxiety which includes dizziness, racing heart, twitching of muscles. He reports these episodes can last about a month and then followed by "crash" with fatigue and a "mellow attitude" which can last about a week or two. He describes his depression as moderate in intensity with increased need for sleep, decrease in interest and tendency to withdraw socially of varying duration.

(Administrative Record at 311.) Dr. Flaum noted that Rettenmaier was first diagnosed with bipolar disorder in 1998. Dr. Flaum also noted that Rettenmaier was hospitalized for manic episodes in 2002 and 2006. Upon examination, Dr. Flaum diagnosed Rettenmaier with bipolar disorder. Dr. Flaum concluded that:

> [Rettenmaier r]elates at least a ten year history of Bipolar 1 with about 2 mod[erate]-severe manic episodes per year. Depression[ is] reported as less severe. Accompanying documents report issues with non compliance with meds and treatment as well as a suggestion that patient confuses his normal mood with depression because he prefers a hypomanic state. This is quite possible.

(Administrative Record at 313-314.) Dr. Flaum recommended medication as treatment.

On June 4, 2009, Rettenmaier was hospitalized at Mercy Medical Center in Dubuque, Iowa, with manic symptoms. Dr. Lawrence Hutchison, M.D., noted that Rettenmaier's bipolar disorder was under "poor control." Rettenmaier was discharged

---

[3] Administrative Record at 311.

from the hospital on June 7, 2009. At the time of discharge, Dr. Adib Kassas, M.D., found that Rettenmaier "has shown gradual improvement in his manic symptoms. His thought process is more organized and he is more functional and sleeping better."[4] Eight days later, on June 15, 2009, Rettenmaier had a follow-up appointment with Dr. C. Aagesen, D.O. Upon examination, Dr. Aagesen noted severe mood swings and hypomanic episodes. Rettenmaier was readmitted to the hospital for stabilization of his continued manic episode. He was discharged from the hospital on July 9, 2009.

On September 21, 2009, Dr. Myrna Tashner, Ed.D., reviewed Rettenmaier's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Rettenmaier. On the Psychiatric Review Technique assessment, Dr. Tashner diagnosed Rettenmaier with bipolar syndrome. Dr. Tashner determined that Rettenmaier had the following limitations: mild restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Tashner determined that Rettenmaier was moderately limited in his ability to: carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. Dr. Tashner concluded that:

---

[4] Administrative Record at 347.

> Preponderance of MER [(medical evidence of record)] supported a [medically determinable impairment] which is severe but duration hasn't been met. [Rettenmaier] is showing improvement. The allegations were credible to the extent supported by MER which was eroded by . . . lack of [medication] compliance. He reported that therapy wasn't helpful. When compliant by 7.15.10, he would be capable of simple routine instructions w[ith] concentration and pace for same. . . . He would not do well w[ith] complex instructions on a sustained basis, but for brief periods may do ok when [medication] compliant. Persistence and concentration may vary w[ith] lack of compliance. He doesn't do well w[ith] authority or coworkers and would do better in a low stress environment w[ith] less social interactions, or change required. . . . Evidence was consistent overall.

(Administrative Record at 400.)

On May 12, 2011, at the request of Rettenmaier's attorney, Sarah Justmann, ARNP, filled out a "Mental Impairment Questionnaire" for Rettenmaier. In the questionnaire, Justmann stated that Rettenmaier began treatment at her clinic in 2009 with other doctors, and transferred to her care in April 2010. Justmann indicated that she saw Rettenmaier every 3 months for medication adjustments. Justmann diagnosed Rettenmaier with bipolar disorder. According to Justmann, since taking his medications consistently, Rettenmaier was doing "fair." Justmann also opined that Rettenmaier's prognosis was "fair" with lifelong medication use.

In considering Rettenmaier's functional abilities, Justmann determined that Rettenmaier was unable to meet competitive standards for the ability to: remember work-like procedures, understand and remember very short and simple instructions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors (when

off his medication), get along with co-workers or peers without unduly distracting them or exhibiting behavior extremes (when off his medication), understand and remember detailed instructions, carry out detailed instructions, set realistic goals or make plans independently of others, and deal with stress of semi-skilled or skilled work. Justmann further determined that Rettenmaier had the following limitations: marked restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Justmann opined that Rettenmaier had an affective disorder of at least 2 years duration that caused more than a minimal limitation on his ability to perform basic work activity, with symptoms or signs attenuated by medication of psychosocial support, and the following: three or more episodes of decompensation within 12 months, each at least two weeks long, and current history of 1 or more years of an inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement. Lastly, Justmann found that Rettenmaier would be absent from work four or more days per month due to his impairments or treatment for his impairments.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Rettenmaier is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from

10

performing past relevant work, and (5) whether the
impairment necessarily prevents the claimant from doing any
other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at

590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process);

*Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R.

§§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in

the evaluation of disability, the process ends and the claimant is determined to be not

disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d

at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

first determines if the claimant engaged in substantial gainful
activity. If so, the claimant is not disabled. Second, the ALJ
determines whether the claimant has a severe medical
impairment that has lasted, or is expected to last, at least
12 months. Third, the ALJ considers the severity of the
impairment, specifically whether it meets or equals one of the
listed impairments. If the ALJ finds a severe impairment that
meets the duration requirement, and meets or equals a listed
impairment, then the claimant is disabled. However, the
fourth step asks whether the claimant has the residual
functional capacity to do past relevant work. If so, the
claimant is not disabled. Fifth, the ALJ determines whether
the claimant can perform other jobs in the economy. If so, the
claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant

"bears the burden of demonstrating an inability to return to [his] or her past relevant

work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*,

524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden

shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC

[(residual functional capacity)], age, education, and work experience, there [are] a

significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Rettenmaier had not engaged in substantial gainful activity since July 15, 2009. At the second step, the ALJ concluded from the medical evidence that Rettenmaier had the following severe impairment: bipolar disorder. At the third step, the ALJ found that Rettenmaier did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Rettenmaier's RFC as follows:

> [Rettenmaier] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to tasks that can be learned in 30 days or less and require no more than simple, work related decisions with few work place changes. The tasks should involve only brief, superficial interaction with the public and coworkers.

(Administrative Record at 16.) Also at the fourth step, the ALJ determined that Rettenmaier was unable to perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Rettenmaier could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Rettenmaier was not disabled.

## B. Objections Raised By Claimant

Rettenmaier argues that the ALJ erred in four respects. First, Rettenmaier argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to include all of his functional limitations in the RFC assessment. Second, Rettenmaier argues that the ALJ failed to properly consider the opinions of Sarah Justmann, ARNP, Rettenmaier's treating nurse practitioner. Third, Rettenmaier argues that the ALJ failed to properly evaluate his subjective allegations of disability. Lastly, Rettenmaier argues that the ALJ failed to properly consider the third-party statements provided by his family and co-workers.

### 1. RFC Assessment

Rettenmaier argues that the ALJ's RFC assessment is not supported by substantial evidence in the record because the ALJ failed to consider all of his functional limitations. Specifically, Rettenmaier argues that when determining his RFC assessment, the ALJ failed to address and consider all of the medical evidence in the record which supports significant functional limitations caused by his bipolar disorder. Rettenmaier requests that his claim be "reversed and awarded benefits because of the strength of the medical records supporting his manic episodes in spite of compliance with his medications."[5] In the alternative, Rettenmaier maintains that this matter should be remanded for further development of his RFC.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment

---

[5] Rettenmaier's Brief (docket number 8) at 13-14.

must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

An ALJ also has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618; *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Having reviewed the entire record, the Court finds that the ALJ properly considered Rettenmaier's medical records, observations of treating and non-treating physicians, and Rettenmaier's own description of his limitations in making his RFC assessment for Rettenmaier.[6] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's

---

[6] *See* Administrative Record at 15-21 (providing a thorough and detailed discussion
(continued...)

14

decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes that Rettenmaier's assertion that the ALJ's RFC assessment is flawed and not supported by substantial evidence is without merit.

### 2. *Justmann's Opinions*

Sarah Justmann, a nurse practitioner, is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Justmann is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a nurse practitioner, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. Furthermore, in discussing SSR 06-03p, the Eighth Circuit Court of Appeals, in *Sloan*, pointed out:

> Information from these 'other sources' cannot establish the existence of a medically determinable impairment, according

---

[6](...continued)
of the relevant evidence for making a proper RFC determination).

to SSR 06-3p. Instead, there must be evidence from an 'acceptable medical source' for this purpose. However, information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

*Sloan*, 499 F.3d at 888 (quoting SSR 06-03p). In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In his decision, the ALJ addressed Justmann's opinions as follows:

On May 12, 2011, Sarah Justman [(*sic*)], ARNP, [Rettenmaier's] treating nurse practitioner since April 19, 2010, provided an opinion which is favorable to [Rettenmaier]. She indicated that [Rettenmaier] was very functionally limited. The undersigned is unable to attribute much weight to the opinion. The nurse practitioner's opinions are not supported by signs and findings consistent with the degree of limitation indicated throughout the time in question. And her findings are inconsistent with her own treatment notes. On the form completed May 12, 2011, the nurse practitioner indicates [Rettenmaier's] current GAF score as 45, and the highest GAF score in the past year as 45. The nurse practitioner's notes do not indicate a score of 45. On April 19, 2010, [Rettenmaier's] GAF was 61-70. In mid July 2010 the nurse practitioner gave a GAF of 51-60. On September 22, 2010, the nurse practitioner gave a GAF back to the level 61-70. The GAF scores of other medical individuals were generally higher than 45 throughout the time in question.

Although GAF scores are subjective and not a true clinical finding, the consistency of [Rettenmaier's] GAF scores through the record, at levels well above 50, suggest that his functioning has remained adequate.

16

The nurse practitioner further opined that [Rettenmaier] was unable to meet competitive standards with respect to remembering work-like procedures, and understanding and remembering very short and simple instructions. However, [Rettenmaier] was able to provide detailed information from memory to the nurse practitioner, the therapists, other treating sources, the Social Security Administration, and the undersigned at the hearing. [He] was able to remember and carry out necessary information and procedures daily for the care of his mother. He was able to, on occasion, remember and carry out very likely detailed and complex instructions and procedures in the running of his father's business.

Ms. Justman's [(*sic*)] opinion apparently relied on complete acceptance of [Rettenmaier's] allegations concerning the existence, persistence and intensity of his symptoms and functional limitations, which the record as a whole establishes are not entitled to full credibility and are an underrepresentation of function.

The opinions are inconsistent with other evidence, and inconsistencies in the record, which the treating nurse practitioner does not appear to have been made aware of or taken note of. The opinions are not consistent with the reports, observations and GAF assessments in the Hillcrest Family Services treatment notes. The nurse practitioner opined that [Rettenmaier's] restriction of activities of daily living have been markedly limited. The opinion is in contrast to daily activities indicated above. [Rettenmaier's] flare-ups of symptoms are consistent with noncompliance with medications.

(Administrative Record at 19-20.) It is clear from the ALJ's decision that he determined that the opinions expressed by Justmann in the "Mental Impairment Questionnaire" for Rettenmaier were inconsistent with her own treatment notes and the record as a whole.

Having reviewed the entire record, the Court finds that the ALJ properly considered Justmann's opinions in accordance with SSR 06-03p. Furthermore, the ALJ properly

articulated his reasons for attributing little weight to Justmann's opinions, and for finding Justmann's opinions to be inconsistent with the record as a whole. *See Raney*, 396 F.3d at 1010 (Providing that in considering the opinions of a medical source that is not an "acceptable medical source," and "ALJ has more discretion and is permitted to consider any inconsistencies found within the record."); *See also Kirby*, 500 F.3d at 709 (providing that an ALJ is entitled to give less weight to a medical source opinion where the opinion is based on a claimant's subjective complaints rather than on objective medical evidence); *Sloan*, 499 F.3d at 889 (providing that a factor to consider in weighing evidence from a medical source that is not an "acceptable medical source" is the consistency of such as source's opinions with the record as a whole). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. Credibility Determination

Rettenmaier argues that the ALJ failed to properly evaluate his subjective allegations of disability. Rettenmaier maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Rettenmaier's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a

claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective

testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ determined that:

> [Rettenmaier] has a work/earnings history which is a factor in his favor concerning the credibility of his allegations. However, factors in his favor are outweighed by other evidence and inconsistencies in the record as a whole.
>
> Overall, [Rettenmaier] may have some waxing and waning symptoms, but he [] remains stable when he complies with his meds. Medications have been effective in reducing or controlling symptoms when used appropriately. There are no side effects of medications credibly established which have lasted for a 12-month continuous period despite attempts at adjustment or substitution, and which further reduce the functional capacity assigned to [Rettenmaier] by the undersigned.
>
> After careful consideration of the evidence, the undersigned finds that [Rettenmaier's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Rettenmaier's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(Administrative Record at 21.)

It is clear from the ALJ's decision that he thoroughly considered and discussed Rettenmaier's treatment history, medical history, functional restrictions, and effectiveness of medications in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Rettenmaier's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not

required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Rettenmaier's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 4. Third-Party Statements

Rettenmaier argues that the ALJ improperly discredited third-party statements from non-medical sources regarding his complaints of disability. Specifically, Rettenmaier asserts that the ALJ improperly discredited statements regarding his functional abilities from his sister-in-law, Janet Rettenmaier, and his sisters, Karen Britback and Joan Lindsay. Rettenmaier also argues that the ALJ improperly discredited the statements of one of his past co-workers, Melissa Chapman.

When considering third-party statements concerning a claimant's symptoms or impairments, the regulations provide that an ALJ must "'carefully consider any other information you may submit about your symptoms,' including statements 'other persons provide about your pain or other symptoms.'" *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011) (quoting 20 C.F.R. § 404.1529(c)(3)); *see also Willcockson v. Astrue*, 540 F.3d 878, 880-81 (8th Cir. 2008) ("[S]tatements of lay persons regarding a claimant's condition must be considered when an ALJ evaluates a claimant's subjective complaints[.]"). In other words, an ALJ may not ignore the statements of other parties regarding a claimant's condition. *Willcockson*, 540 F.3d at 881.

Here, the ALJ addressed the third-party statements as follows:

> Third party reports (Exhibits 6E; 18E; 19E; 20E) suggest significant problems, but these observations appear to describe [Rettenmaier] when he is not taking medications as prescribed. The reports are certainly not consistent with his treating source reports, mental status examination observations, and GAF assessments . . . and are given little persuasive weight.

(Administrative Record at 21.[7])

It is clear from the ALJ's decision that he considered and addressed the statements of Janet Rettenmaier, Britback, Lindsay, and Chapman. Furthermore the ALJ provided reasons for discounting these statements. By providing reasons for discrediting the statements, the ALJ did more than is necessary according to the Eighth Circuit Court of Appeals, for evaluating the credibility of third-party witnesses. In *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992), the Eighth Circuit determined that failure to provide any reasons for discrediting a third-party witness or statement is not error when support for discrediting such a witness or statement is found in the same evidence used by an ALJ to find that a claimant's testimony is not credible. *See also Lorenzen v. Chater*, 71 F.3d 316, 319 (8th Cir. 1995) ("[A]lthough the ALJ failed to list specific reasons for discrediting the testimony of Carol Bennett, it is evident that most of her testimony concerning Lorenzen's capabilities was discredited by the same evidence that discredits Lorenzen's own testimony concerning his limitations."); *Buckner*, 646 F.3d at 559-60 (discussing *Robinson* and *Lorenzen* and applying that reasoning to testimony from the claimant's girlfriend). Because the ALJ explicitly considered the statements of Janet Rettenmaier, Britback, Lindsay, and Chapman in his decision, and provided reasons for discrediting their statements, the Court concludes that the ALJ properly addressed the

---

[7] Exhibits 6E, 18E, 19E, and 20E refer to the statements from Rettenmaier's sisters, sister-in-law, and former co-worker.

third-party statements in making his credibility determinations. Moreover, the Court finds that the reasons articulated by the ALJ for discrediting these statements are supported by the reasons for discrediting Rettenmaier's own testimony regarding his limitations. *See Buckner*, 646 F.3d at 559-60; *Lorenzen*, 71 F.3d at 319. Therefore, the Court concludes that Rettenmaier's assertion that the ALJ improperly discredited the thrid-party statements is without merit.

## VI. CONCLUSION

The Court finds that the ALJ fully and fairly developed the record with regard to the medical evidence in the case, and made a proper RFC assessment for Rettenmaier. Furthermore, the Court determines that the ALJ properly considered and addressed the opinions of Sarah Justmann, Rettenmaier's treating nurse practitioner. The Court also finds that the ALJ properly determined Rettenmaier's credibility with regard to his subjective complaints of disability. Lastly, the Court finds that the ALJ properly discredited the third-party statements of Rettenmaier's sisters, sister-in-law, and former co-worker. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.    The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.    Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3.    The Clerk of Court is directed to enter judgment accordingly.

DATED this _5th_ day of December, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA